Andrew Rozynski, Esq. (*pro hac vice to be filed*)
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
*Attorneys for Plaintiff*

Jared Allebest, #325086
Allebest Law Group PLLC
212 East Crossroads Blvd #207
Saratoga Springs, Utah 84045
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

-------------------------------------------------

RODGER B. LANORIAS,

          Plaintiff,

     v.

KAISER FOUNDATION HOSPITALS,
ROES I-X

         Defendants.

-------------------------------------------------

**COMPLAINT**

**Civ No. 5:25-cv-01547**

**JURY DEMAND**

-1-

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

1.      This is a civil action for disability discrimination in violation of federal and California law. Plaintiff RODGER B. LANORIAS ("Plaintiff") is a qualified deaf individual who applied and interviewed for a Housekeeping Attendant position with Defendant KAISER FOUNDATION HOSPITALS ("Kaiser" or "Defendant"). Despite the Plaintiff's qualifications and Kaiser's initial interest in hiring him, Kaiser explicitly rejected the Plaintiff solely because of his deafness, relying on unfounded stereotypes about the capabilities of deaf individuals. Kaiser made this decision without ever assessing Plaintiff's actual abilities, without engaging in any interactive process to identify reasonable accommodations, and without considering the successful accommodations implemented by healthcare facilities nationwide for deaf employees in similar positions.

2.      Kaiser's actions clearly violate established law prohibiting blanket exclusion policies against individuals with disabilities and demonstrate a deliberate indifference to the Plaintiff's federally and state-protected rights. In a July 22, 2024 email, Kaiser explicitly confirmed that Plaintiff's deafness was the reason he was not hired, admitting in writing to the EEOC that it "exercised the same rationale for refusing to hire [Plaintiff] as to other candidates with the same medical condition based on the Respondent's management team's decision." This constitutes an explicit admission that Kaiser maintains and enforces an illegal blanket policy that categorically excludes all deaf applicants from housekeeping

COMPLAINT

positions, regardless of their individual abilities or the availability of reasonable accommodations. The discriminatory absurdity of Kaiser's position is stark: while deaf individuals serve successfully as doctors, nurses, and EMTs in healthcare settings nationwide, Kaiser claims that the one job a deaf person cannot perform is cleaning a hospital.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as the action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794. The Court has authority to grant declaratory and injunctive relief under these statutes and 28 U.S.C. §§ 2201-2202.

5.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Plaintiff's FEHA claims share a common nucleus of operative fact with the federal claims, as all claims arise from the same series of events – Kaiser's discriminatory failure to hire Plaintiff because of his disability.

6.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because the acts of discrimination occurred in Riverside County, California, which is within this District. Plaintiff attended a job interview at Kaiser Permanente's Riverside

Medical Center located at 10800 Magnolia Avenue, Riverside, California 92505, and the discriminatory employment decision was made and communicated in this District.

7.     Assignment to the Eastern Division is appropriate because the discriminatory events took place in Riverside, California.

**PARTIES**

8.     Plaintiff RODGER B. LANORIAS is an individual residing in Riverside County, California. Plaintiff is profoundly deaf, a physical impairment that substantially limits the major life activity of hearing. Plaintiff communicates effectively through American Sign Language (ASL), written English, and lip reading, and has developed numerous strategies for ensuring clear communication in workplace settings. At all relevant times, Plaintiff has been ready, willing, and able to work. Plaintiff is a "qualified individual with a disability" within the meaning of the ADA, 42 U.S.C. § 12111(8), and a person with a physical disability as defined by California Government Code § 12926.

9.     Defendant, KAISER FOUNDATION HOSPITALS is a California  public benefit corporation and integrated healthcare provider conducting business throughout California, including Kaiser Permanente Riverside Medical Center located at 10800 Magnolia Avenue, Riverside, California 92505. Kaiser employs more than 500 employees

-4-

COMPLAINT

nationwide and is an "employer" under the ADA, a recipient of federal financial assistance under the Rehabilitation Act, and an "employer" under FEHA. Whenever reference is made to any act or omission of Kaiser, it is alleged to be the act or omission of Kaiser's officers, directors, employees, agents, or managerial representatives, each acting within the course and scope of their employment or agency with Kaiser. In particular, the individuals who corresponded with Plaintiff regarding his application and interview – including Kaiser recruiter Max Zarnegar and Director Laurent – were acting on Kaiser's behalf.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Qualifications and Kaiser's Initial Interest

10.    Plaintiff is an experienced worker who has successfully navigated the hearing world throughout his life. Despite his profound deafness, Plaintiff has a strong desire to work and be self-sufficient. He communicates effectively through written English and ASL, and has developed numerous strategies for ensuring clear communication in workplace settings.

11.    In or about May 2024, Plaintiff learned of job opportunities at Kaiser through a job fair organized by Goodwill Southern California. The plaintiff worked with job placement professionals to facilitate the application process, including Marisa Battiest, a Business Service Specialist with Goodwill Southern California, and Shannon McCroskey and Krysten Cox from GLAD Employment Services (a division of the California Employment Development Department).

COMPLAINT

12.     The position of Housekeeping Attendant (Environmental Services or "EVS") primarily involves physical tasks: cleaning and sanitizing patient rooms and facilities, managing waste including biohazardous waste, stocking supplies, and operating cleaning equipment. These tasks do not inherently require the ability to hear; any necessary communication or auditory signals can be accommodated through assistive technology or human assistance.

13.     In June 2024, Plaintiff applied for the Housekeeping Attendant position at Kaiser's Riverside facility. Kaiser expressed interest in Plaintiff's application and invited him to participate in its hiring process. On June 21, 2024, Kaiser's recruiting staff announced in-person interviews termed a "Meet and Greet" for Housekeeping Attendant positions at the Kaiser Riverside Medical Center.

14.     On June 28, 2024, Ms. Battiest confirmed in an email that "Roger Lanorias has been invited to attend the Kaiser Meet and Greet – Riverside on July 3, 2024 @ 9:00 am" and requested confirmation of ASL interpreter availability. She further noted, "Kaiser Recruiter Max Zarnegar has been made aware of the accommodation." Thus, by June 28, 2024, Kaiser knew that the Plaintiff is deaf and would require an ASL interpreter for the interview.

15.     On July 2, 2024, Kaiser recruiter Max Zarnegar sent Plaintiff an enthusiastic email with final instructions for the July 3rd Meet and Greet. The email emphasized Kaiser's interest, stating "Thank you for the interest in our Housekeeping Attendant roles!"

COMPLAINT

and providing detailed instructions for the interview. Critically, the email stated: "Meet and Greet is about an hour long and you will meet with multiple people during the time. There are multiple openings for this role." This confirmed that Kaiser was looking to hire more than one person for the position.

16.    Plaintiff was provided with a certified ASL interpreter Ms. Cox from GLAD Employment Services, to assist Plaintiff during the interview. This demonstrated both Kaiser's awareness of the Plaintiff's deafness and how such could be arranged if needed.

**B. The Interview and Kaiser's Discriminatory Response**

17.    On July 3, 2024, Plaintiff attended the scheduled Meet and Greet interview at Kaiser's Riverside facility, arriving on time and dressed professionally. With the assistance of the ASL interpreter that Kaiser had provided, Plaintiff successfully participated in the interview process, met with multiple Kaiser personnel, answered questions about his background, and expressed his enthusiasm for joining Kaiser's team. Plaintiff's deafness did not prevent him from understanding the interviewers or conveying his responses, demonstrating his ability to communicate effectively when reasonable accommodations are provided.

18.    Following the interview, Kaiser abruptly reversed course. Kaiser refused to consider any accommodations that would enable Plaintiff to perform the housekeeping position. When Plaintiff did not hear back immediately, he proactively reached out to Kaiser's recruiter. On July 16, 2024, Plaintiff emailed Mr. Zarnegar to thank him for the

COMPLAINT

interview opportunity and politely asked if any candidates had been selected yet. This courteous follow-up underscored Plaintiff's continued interest in the job.

19.    On July 16, 2024, at 1:13 PM, Mr. Zarnegar responded: "Good Afternoon, … Based on my records, you were not selected. I do not have specific feedback from the manager at this time." This brief message gave Plaintiff no explanation for the decision. Given that multiple positions were open and he had fulfilled all interview requirements with the aid of an interpreter, Plaintiff struggled to understand why he was rejected.

20.    In the days following this initial rejection notice, Plaintiff and his job placement advocates sought to find out why Plaintiff was passed over. Through follow-up communications, Plaintiff hoped to either correct any misimpressions or at least learn from the experience.

21.    On July 22, 2024, Kaiser's recruiter Max Zarnegar sent an email to Plaintiff's job placement coordinator containing what he termed the "official response" from Kaiser's "Director Laurent." The email explicitly confirmed that Plaintiff's deafness was the reason he was not hired. Kaiser's stated reasons for rejection were first, "Safety Concerns. Emergency codes are issued through the intercom system. New employees will need to work individually and must be able to hear and respond to codes not limited to: active shooter, fire, police activity." Second, "Patient Care. Employees must individually engage

COMPLAINT

patients and hospital staff real-time... We do not have systems in place for the EVS employees to efficiently communicate with the patients in real-time."

22.    Kaiser Made this Statement, despite knowing as a hospital it has ready access to on demand sign language interpreters 24/7 through its Video Remote Interpreting Systems

23.    Critically, Kaiser admitted in writing to the EEOC that it "exercised the same rationale for refusing to hire [Plaintiff] as to other candidates with the same medical condition based on the Respondent's management team's decision." This constitutes an explicit admission that Kaiser maintains and enforces an illegal blanket policy that categorically excludes all deaf applicants from housekeeping positions, regardless of their individual abilities or the availability of reasonable accommodations.

**C. Kaiser's Failure to Conduct an Individualized Assessment**

24.    At no time did Kaiser conduct any individualized assessment of Plaintiff's actual abilities to perform the essential functions of the housekeeping position with or without reasonable accommodation. Kaiser never asked Plaintiff about his experience navigating emergency situations in his daily life, his methods of perceiving environmental changes, or his ideas for maintaining safety awareness in the workplace.

25.    Kaiser never evaluated whether Plaintiff could perform the actual essential functions of the position, which consist primarily of cleaning, sanitizing, waste management, and supply stocking—none of which inherently require hearing. There are

-9-

COMPLAINT

deaf doctors, deaf nurses, and deaf EMTs successfully working in healthcare settings across the nation, but according to Kaiser Permanente and its blanket policy, there is one job no deaf person can do with or without reasonable accommodation: cleaning in a hospital as a housekeeping attendant. This absurd position reveals the discriminatory nature of Kaiser's policy.

26.    Kaiser's assertion that housekeeping staff must "individually engage patients" in "real-time" communication is both factually questionable and legally insufficient to justify blanket exclusion, as the primary duties of housekeeping staff involve cleaning, not clinical patient interaction; many patient interactions can be accomplished through gesture, written communication, or communication cards; and not all patients can hear or speak, yet Kaiser does not exclude housekeeping staff who cannot communicate with deaf or non-verbal patients.

**D. Kaiser's Failure to Engage in the Interactive Process**

26.    Despite its legal obligation to engage in a timely, good-faith interactive process to identify reasonable accommodations, Kaiser made no effort whatsoever to explore accommodations that would enable Plaintiff to perform the essential functions of the position. Kaiser never discussed with Plaintiff how he has successfully responded to emergencies throughout his life, what accommodations might enable him to receive emergency notifications, how he could effectively communicate with patients and staff, or what accommodations have worked for him in other settings.

27.     Kaiser's complete failure to engage in any interactive process is particularly egregious given that Kaiser had already demonstrated its ability to provide accommodations by arranging an ASL interpreter for the interview; numerous readily available, low-cost accommodations exist for deaf employees in healthcare settings; and healthcare facilities across the country have successfully employed deaf workers in similar positions using common accommodations.

**E. Available Accommodations Kaiser Refused to Consider**

28.     Had Kaiser engaged in the required interactive process, it would have discovered numerous proven accommodations successfully used in healthcare settings nationwide, including visual alert systems with strobe lights that flash different colors or patterns for different emergency codes; vibrating pagers/apps connected to the facility's alarm system; text messaging systems for non-emergency communications; buddy systems pairing deaf employees with hearing colleagues during emergencies; written communication cards for routine patient interactions; video remote interpreting systems and smartphone apps that provide real-time captioning or sign language interpreters.

29. These accommodations are neither experimental nor expensive. Kaiser, as one of the nation's largest healthcare organizations with extensive resources and expertise, knows or should know that such accommodations are readily available and effective.

**F. Kaiser's Discriminatory Intent and Impact on Plaintiff**

COMPLAINT

30.     Kaiser's conduct demonstrates intentional discrimination and deliberate indifference to Plaintiff's rights: Kaiser was willing to utilize an ASL interpreter for a one-hour interview but unwilling to explore any accommodations for the job itself; Kaiser enforces a blanket policy excluding all deaf individuals from housekeeping positions; Kaiser relies on unfounded stereotypes about deaf individuals' capabilities rather than conducting individualized assessments; and Kaiser made no effort to engage in the legally required interactive process. Kaiser's discriminatory stereotyping is particularly egregious given that it operates medical facilities where deaf healthcare professionals – including doctors, nurses, and technicians – successfully work with appropriate accommodations, yet it categorically refuses to consider that a deaf person could perform the far less complex task of housekeeping.

31.     Being denied employment under these circumstances was devastating to Plaintiff. Plaintiff felt humiliated and devalued upon learning that Kaiser – an organization he admired and was excited to join – had rejected him solely because of his deafness. The knowledge that his disability was the stated reason caused Plaintiff significant emotional distress, including feelings of anxiety, sadness, and loss of self-confidence. Furthermore, Plaintiff has suffered economic harm: the Housekeeping Attendant position was an entry point into stable employment with good benefits. By losing that opportunity due to discrimination, Plaintiff missed out on wages, benefits, and career advancement he otherwise would have earned.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

32.    On or about August 20, 2024, Plaintiff timely filed Charge of Discrimination No. 480-2024-05555 with the Equal Employment Opportunity Commission ("EEOC") and cross-filed with the California Department of Fair Employment and Housing ("DFEH"), now the California Civil Rights Department.

33.    On or about March 24, 2025, the EEOC issued a Dismissal and Notice of Rights. This action is commenced within 90 days of Plaintiff's receipt thereof. All conditions precedent to bringing this lawsuit have been satisfied or waived.

**FIRST CAUSE OF ACTION**

**Disability Discrimination in Violation of the ADA**

**(42 U.S.C. § 12112, et seq.)**

34.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

35.    The ADA prohibits discrimination against qualified individuals with disabilities in all aspects of employment, including hiring. 42 U.S.C. § 12112(a). At all relevant times, Kaiser was an employer subject to the ADA, engaged in an industry affecting commerce and employing 15 or more employees.

36.    Plaintiff is a qualified individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the housekeeping position. Plaintiff has a physical impairment (profound deafness) that substantially limits one or more major life activities (hearing and verbal communication), and he satisfied the

prerequisites for the Housekeeping Attendant job and was capable of performing its essential duties.

37.     Kaiser discriminated against Plaintiff in violation of the ADA by refusing to hire him because of his disability; utilizing qualification standards that screen out individuals with disabilities without showing such standards are job-related and consistent with business necessity; failing to make reasonable accommodations to Plaintiff's known disability; denying employment opportunities based on the need to make reasonable accommodation; using standards, criteria, or methods of administration that have discriminatory effects on individuals with disabilities; and regarding Plaintiff as having an impairment that substantially limits major life activities and discriminating against him on that basis.

38.     Kaiser's July 22, 2024 email makes clear that Plaintiff's disability was the sole or predominant reason for the adverse decision. By refusing to hire Plaintiff due to concerns related to his deafness, Kaiser treated Plaintiff less favorably than similarly-situated hearing applicants. This constitutes disparate treatment based on disability.

39.     Kaiser cannot establish that Plaintiff posed a "direct threat" that could not be eliminated by reasonable accommodation, as required by 42 U.S.C. § 12113(b), because Kaiser conducted no individualized assessment based on reasonable medical judgment; Kaiser relied on generalizations and stereotypes rather than objective evidence; Kaiser failed to consider the duration, nature, severity, likelihood, and imminence of any potential

risk; and Kaiser failed to consider whether reasonable accommodations would eliminate any risk. The irrationality of Kaiser's position is evident: while healthcare facilities nationwide employ deaf doctors who make life-and-death decisions, deaf nurses who provide direct patient care, and deaf EMTs who respond to emergencies, Kaiser maintains that a deaf person cannot safely clean hospital rooms.

40.    Kaiser failed to engage in the required interactive process to determine appropriate reasonable accommodations, which constitutes an independent violation of the ADA. Kaiser's complete failure to engage in any interactive process violates the ADA's mandate to provide reasonable accommodations unless doing so would impose an undue hardship.

41.    Accommodating Plaintiff in the Housekeeping position would not have imposed any undue hardship on Kaiser. Kaiser Permanente is a large organization with extensive resources and experience in employing individuals with various disabilities. The accommodations Plaintiff would need are modest and routinely provided by many employers, including in healthcare settings.

42.    Kaiser's violations were willful, as evidenced by its knowing enforcement of a blanket exclusion policy and its deliberate refusal to engage in any individualized assessment or interactive process. Kaiser acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

43.     As a direct and proximate result of Kaiser's unlawful conduct, Plaintiff has suffered lost wages and benefits, lost employment opportunities, emotional distress, including humiliation, frustration, and damage to his confidence and career prospects, and other damages. Pursuant to 42 U.S.C. § 12117(a) (incorporating the remedies of Title VII), Plaintiff is entitled to legal and equitable relief, including back pay, front pay or reinstatement, compensatory damages, and punitive damages.

## SECOND CAUSE OF ACTION

## Disability Discrimination in Violation of the Rehabilitation Act

## (29 U.S.C. § 794)

44.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

45.     Section 504 of the Rehabilitation Act provides that no otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

46.     At all relevant times, Kaiser was a recipient of federal financial assistance and/or operated programs or activities receiving such assistance through participation in Medicare, Medicaid, and/or federal grants or contracts in its healthcare operations. Kaiser is therefore subject to the anti-discrimination mandate of the Rehabilitation Act.

47.     Plaintiff is an otherwise qualified individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the

housekeeping position. Plaintiff meets the definition of an "individual with a disability" under the Rehabilitation Act (29 U.S.C. § 705(20)(B)) and was "otherwise qualified" for the position he sought.

48.    Kaiser discriminated against Plaintiff solely by reason of his disability by refusing to hire him based on his deafness, without conducting any individualized assessment or exploring reasonable accommodations. Kaiser's own communications confirm that Plaintiff's deafness was the sole cause of his rejection. By excluding Plaintiff from employment for this reason, Kaiser denied him the benefits of its program (employment opportunities) on the basis of disability.

49.    Section 504 requires that recipients of federal funds make reasonable accommodations to enable persons with disabilities to have access to employment, unless doing so would impose an undue hardship. Kaiser failed to meet this obligation. It neither provided nor considered any post-interview accommodations and instead made an adverse decision that was directly and solely tied to Plaintiff's disability.

50.    As a direct and proximate result of Kaiser's violation of the Rehabilitation Act, Plaintiff suffered economic losses and emotional distress. Under 29 U.S.C. § 794a(a)(2), the remedies, procedures, and rights available under Title VII are equally available to Plaintiff. Plaintiff therefore seeks all remedies allowed, including injunctive relief, reinstatement or front pay, back pay with interest, and compensatory damages. Plaintiff also seeks attorneys' fees and costs under 29 U.S.C. § 794a(b).

COMPLAINT

### THIRD CAUSE OF ACTION

### Violation of the California Fair Employment and Housing Act (FEHA)

### (Cal. Gov. Code § 12940, et seq.)

51.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

52.    FEHA makes it an unlawful employment practice for an employer, "because of the … physical disability … of any person, to refuse to hire or employ the person … or to discriminate against the person in terms, conditions, or privileges of employment." Cal. Gov. Code § 12940(a).

53.    At all relevant times, Kaiser was an employer covered by FEHA, employing 5 or more persons. Plaintiff, as a deaf individual, has a "physical disability" as defined in Gov. Code § 12926(m) – a condition that affects the auditory body system and limits the major life activity of hearing and communicating.

54.    Kaiser violated FEHA by refusing to hire Plaintiff because of his actual or perceived disability; failing to provide reasonable accommodations for Plaintiff's known disability; failing to engage in a timely, good faith interactive process to determine effective reasonable accommodations; and maintaining and enforcing discriminatory policies that categorically exclude deaf individuals.

55.    Kaiser's decision not to offer Plaintiff a job was directly motivated by Plaintiff's disability, as admitted in the July 22 email. This constitutes unlawful disparate

treatment. Under FEHA, even a well-intentioned concern is not a defense – if the decision was made "because of" the disability, it is discriminatory.

56.    Kaiser's failure to engage in any interactive process violates Cal. Gov. Code § 12940(n) and constitutes a separate, independent violation of FEHA. Despite its legal obligation to engage in a timely, good-faith interactive process to identify reasonable accommodations, Kaiser made no effort whatsoever to explore accommodations. There was no meeting, call, or correspondence in which Kaiser asked Plaintiff what assistance or modifications he might require to perform the job duties.

57.    Under Cal. Gov. Code § 12940(m), it is an unlawful employment practice for an employer to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Kaiser did partially accommodate Plaintiff by providing an interpreter for the interview; however, Kaiser then failed to accommodate Plaintiff with respect to the actual job opportunity. Instead of considering any on-the-job accommodations, Kaiser simply eliminated Plaintiff from consideration.

58.    Providing reasonable accommodations for Plaintiff would not have caused undue hardship to Kaiser. Kaiser is a massive healthcare organization with vast resources. The accommodations likely needed – occasional interpreter services, visual alert devices, modified communication methods – are relatively inexpensive and frequently used in many workplaces.

59.    To the extent Plaintiff, through his request for an ASL interpreter and through his advocates' inquiries, engaged in protected activity under FEHA, Kaiser's adverse action also constitutes unlawful retaliation in violation of Cal. Gov. Code §§ 12940(h) and 12940(m)(2). Requesting a reasonable accommodation for a disability is a protected right under FEHA, and Kaiser's refusal to hire Plaintiff following his accommodation request demonstrates a retaliatory motive.

60.    As a direct and proximate result of Kaiser's violations, Plaintiff has suffered economic losses including lost wages and benefits, emotional distress, and other damages. Kaiser's conduct was despicable and undertaken with a willful and conscious disregard for Plaintiff's rights, entitling Plaintiff to punitive damages under Cal. Civ. Code § 3294.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

I.    For a judicial declaration that Kaiser's acts, policies, and practices violate the ADA, the Rehabilitation Act, and FEHA;

II.    For preliminary and permanent injunctive relief enjoining Kaiser from:

a. Discriminating against individuals with disabilities;

b. Maintaining or enforcing blanket exclusion policies against deaf individuals;

c. Failing to conduct individualized assessments of applicants with disabilities;

COMPLAINT

d. Failing to engage in the interactive process required by law;

III. For mandatory injunctive relief requiring Kaiser to:

a. Implement visual alert systems and other accommodations for deaf employees;

b. Revise its policies to ensure individualized assessments;

c. Offer Plaintiff a Housekeeping Attendant or equivalent position with retroactive seniority and benefits;

d. Train all managers and human resources personnel on disability discrimination laws;

e. Report compliance to the Court for a period of three years;

IV.   For compensatory damages according to proof, including:

a. Back pay and lost wages from July 2024 to present;

b. Front pay or reinstatement;

c. Lost benefits and opportunities;

d. Emotional distress, humiliation, anxiety, embarrassment, and mental anguish;

V. For punitive damages based on Kaiser's malicious, oppressive, and reckless conduct;

VI. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205 (ADA), 29 U.S.C. § 794a(b) (Rehabilitation Act), and Cal. Gov. Code § 12965(b) (FEHA);

COMPLAINT

VII. For pre-judgment and post-judgment interest at the maximum legal rate;

VII. For all other relief the Court deems just and proper.

VIII. For all other relief the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:        June 21, 2025            Respectfully Submitted,

                                       EISENBERG & BAUM, LLP

                                       By: _____
                                       Andrew Rozynski, Esq.
                                       (*pro hac vice to be filed*)
                                       24 Union Square East, PH
                                       New York, NY 10003,
                                       (212) 353-8700
                                       arozynski@eandblaw.com

                                       /s/ Jared Allebest
                                       Jared Allebest, #325086
                                       Allebest Law Group PLLC
                                       212 East Crossroads Blvd #207
                                       Saratoga Springs, Utah 84045
                                       Cell: (949) 322-3991
                                       Videophone: (801) 204-9055
                                       Email: Jared@Allebest.com

-22-
COMPLAINT